Kevin J. HENKEL, Appellant,

v.

Kenneth HOLM, Respondent.

No. CO–87–412.

Court of Appeals of Minnesota.

Aug. 25, 1987.

Paul M. Malone, Malone & Mailander, Slayton, for appellant.

Paul E. Stoneberg, Christianson, Stoneberg, Giles & Myers, P.A., Marshall, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN,* JJ.

## OPINION

LESLIE, Judge.

Appellant Kevin Henkel's personal injury claim against respondent Kenneth Holm came to trial on January 27 and 28 of 1987. After the jury had begun deliberation on the matter, the trial court granted Holm's earlier motion for a directed verdict. Regardless, the trial court still allowed the jury to present its verdict, in which it found Holm 50% liable. The trial court then issued its order for a directed verdict, contrary to the jury findings, and judgment was entered accordingly. We reverse and remand.

## FACTS

Appellant Kevin Henkel's claim against respondent Kenneth Holm arose out of events occurring at a stag party they both attended. The party was held in a building which housed a plumbing shop where Holm worked. Among other things, alcohol was served. Both Henkel and Holm had been drinking the night of the party.

Henkel testified that he drank more than ten glasses of beer. Henkel indicated the alcohol had affected him stating, "I imagine my reactions were awful slow compared to if I hadn't been drinking * * * I wasn't staggering or that way. Good feeling. My reflections might have been a little slow, but as far as staggering, no." Holm had a similar experience. Holm testified that he also drank ten beers. He stated the alcohol affected him as well: "Well, I had a few beers, but I felt I was in control—I guess."

A series of incidents led to Henkel's injury. The first involved Henkel, Holm, a third person named Sween, and two women. The three men and two women were clustered around a door with a glass pane leading out of the shop. Sween "was attempting to go out with one" and wanted Henkel and/or Holm to accompany him

with the two women. Appellant Henkel declined, stating, "I'm not going to have any part of this," and pushed Holm. Holm fell into the door, breaking the glass panel. No one was injured, yet the destruction of the glass in the door, and the whole incident itself, created animosity between appellant Henkel and respondent Holm.

Three other incidents occurred. In the first two Henkel and Holm came into conflict such that they had to be held apart by the other guests at the stag party. The evidence is conflicting as to the degree of physical contact involved, but no one was injured. Henkel was injured as a result of the third incident.

The evidence is conflicting as to what happened in this third incident. Holm testified that he was Henkel's friend and that he had felt bad about the conflict between them. Holm stated, "I just kind of walked over there and I said 'Kevin we are friends, you know, let's knock it off' * * * I had my hand out and I wanted to shake hands." Holm testified that at that point Henkel saw him, was "mad," and started coming after him. The "Nelson boys" jumped in between them before any contact was made.

Henkel testified that he turned and saw Holm charging at him with his hands swinging at his sides. His hand was not extended for a handshake. Henkel testified that he didn't know how to react when he saw Holm coming at him at a "pretty good clip" "looking mad," because Holm had hit him from behind before. In order to defend himself from Holm's apparent attack, Henkel testified he grabbed for Holm's hands. Henkel indicated that three men at the party, Mike Nelson, Bill Nelson and Mark Joosten, interceded before contact was made. When these men grabbed him, they all fell over in a heap with Mike Nelson on top. Sometime during this fall Henkel broke his leg.

Mike Nelson's testimony conflicted with the testimony of both parties. Mike Nelson testified that he saw that both Henkel and Holm had grabbed and were swinging

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

at each other. "It was close contact. They had hold of each other with one hand and kind of swinging away and no one was really, you know, landing any blows, to my recollection, that would hurt anybody." He testified he jumped in to stop the fight, "When we grabbed them they were, like I said, they were holding onto one another and swinging at each other and they continued to do that as we pulled them apart." After Nelson, his brother Bill and Mark Joosten stopped the fight, they all fell, "We hit the floor and Kevin looked up at me and said, 'My leg is broken.' I looked over and said, 'You are right, it is broken.'"

Steven Swift witnessed the altercation. He testified that he saw Henkel pursuing Holm, "[W]hen I heard the commotion I looked up and Kevin and Homer were in this area and Kevin was swinging at Homer and Homer was backing up along the door, kind of stumbling backwards and holding up his arms from keeping hit * * * Kevin was trying to hit Homer. I don't know if he did or not. He was swinging."

At the close of appellant Henkel's case, respondent Holm moved for a directed verdict. At the close of all evidence, while the jury was deliberating, the trial court gave Henkel the opportunity to respond to Holm's motion. The court then granted Holm's motion for a directed verdict:

> I'd like to indicate that in granting the motion for directed verdict I am doing so on the following basis: First, that the court finds that as a matter of law that [appellant] did assume the risk in his conduct opposed to the [respondent]. And the court, in making such finding, believes that it is looking at the facts as can best be looked at from [appellant's] point of view. The court finds that as a second basis, not that there is no evidence of intentional acts. The court believes there is evidence of intentional acts, both assault and battery, but the court finds instead that as a matter of law those acts could not have been a direct cause of the injury of [appellant]. The court finds as a matter of law that the acts of others who attempted to restrain [appellant] were a superseding cause as defined in the jury instructions

which have been given. And as a fourth basis for the court's ruling, the court finds as a matter of law first, that [respondent] was not negligent, looking at the foreseeability of the injury which did occur, and finds as a matter of law that that injury was not foreseeable. And second, the court finds that even had the defendant been negligent that the injury to [appellant] was not a direct cause of that negligence.

The trial court then allowed the jury to present its verdict. The jury delivered a verdict contrary to the trial court's findings. The jury found that respondent Holm was negligent and that his negligence was a direct cause of appellant Henkel's injuries. The jury found that there was no superseding cause of those injuries. The jury found that appellant Henkel had been negligent and that his negligence had caused his own injuries. Ultimately, the jury found appellant Henkel 50% negligent and respondent Holm 50% negligent. On the damages issue, the jury found $5,000 for disability and disfigurement, $5,000 for pain and emotional distress, $12,500 in medical expenses, and $12,945 for loss of earnings or earning capacity. Damages totaled $44,445.

Contrary to the jury verdict, the trial court then issued a directed verdict in favor of respondent Holm. Its order for directed verdict was issued on January 28, 1987, judgment was entered on March 2, 1987. Notice of appeal was filed on March 5, 1987.

**ISSUE**

Did the trial court err in directing a verdict against appellant?

**ANALYSIS**

■ When a motion for a directed verdict is made, it shall not be granted "[i]f the evidence is sufficient to sustain a verdict for the opponent." Minn.R.Civ.Proc. 50.01. On review of the trial court's grant of a directed verdict, this court must view the evidence as a whole in the light most favorable to the party against whom the

verdict was directed. *Wohlfeil v. Murray Machinery, Inc.,* 344 N.W.2d 869, 872 (Minn.Ct.App.1984). A directed verdict is only appropriate in the exceptional case:

It is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question for determination becomes one of law for the court.

*Id.* at 873 (quoting *Schmenski v. Church of St. Casimir of Wells,* 243 Minn. 289, 291–92, 67 N.W.2d 644, 646 (1954)).

The trial court directed a verdict for Holm based on findings it made as a matter of law on three grounds: First, Henkel assumed the risk of his injury; Second, Holm's actions did not cause Henkel's injuries, as the conduct of third parties acted as a superseding cause; Third, Henkel's injury was not foreseeable.

*Primary Assumption of Risk*

█ Primary assumption of the risk relates to the initial issue of whether the defendant had any duty to protect the plaintiff from the risk of harm. *Swagger v. City of Crystal,* 379 N.W.2d 183, 185 (Minn.Ct.App.1985) *pet. for rev. denied* (Minn. Feb. 19, 1986). Primary assumption of the risk applies "only where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. As to those risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent." *Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974). Primary assumption of the risk is still applicable in Minnesota, despite the enactment of the comparative fault act, Minn.Stat. § 604.01 (1986). *Swagger,* 379 N.W.2d at 184–85.

*Swagger* involved the limited duty of the management of a baseball park to spectators of a game. *Id.* at 185. Patrons of baseball games generally assume the risk of injury from thrown or batted balls when they sit in an unprotected seat. *Id.*

Similarly, in cases of roughhousing and fighting, courts have held that a plaintiff is barred from recovery where "he consciously assumed the risk of harm he ultimately suffered." *Haber v. County of Nassau,* 418 F.Supp. 1120, 1123 (E.D.N.Y.1976) (quoting *Jones v. Kent,* 35 A.D.2d 622, 623, 312 N.Y.S.2d 728, 730 (3d Dept.1970)). "Persons who engage in roughhouse horseplay also accept the risk of accidental injuries which result from participation therein." *Hellriegel v. Tholl,* 69 Wash.2d 97, 105–06, 417 P.2d 362, 367 (1966).

In this case, there is evidence from which the trial court could have found that both Henkel and Holm voluntarily entered into a fight, both assuming the risk of injuries resulting from such a pursuit. Yet, there is also evidence from which the trial court could have found that Holm had attacked Henkel and that Henkel had merely acted in self-defense. In such a case Henkel would not have voluntarily entered into a relationship with Holm, assuming the well known incidental risks inherent in a fight.

█ There is conflicting evidence as to who initiated the altercation that resulted in Henkel's injury. Reasonable minds could differ as to the conclusion to be drawn from the evidence. Consequently, the trial court erred in directing a verdict for Holm on the issue of assumption of risk.

*Superseding Causation*

█ Generally, a superseding intervening cause is an act of a plaintiff, third person, or force of nature which could not have been reasonably foreseen, occurring after the defendant's negligence, and operating as an independent force to produce the plaintiff's injury. *Hafner v. Iverson,* 343 N.W.2d 634, 637 (Minn.1984). The trial court found as a matter of law that the intervention of spectators to the altercation between Henkel and Holm acted as a superseding intervening cause of Henkel's injuries and thus insulated any alleged negligence on the part of Holm.

It is true that third persons independent of Holm's alleged negligence intervened in his altercation with Henkel. It also is the case that this intervention operated as an independent force to produce Henkel's injuries. It was the acts of the spectators who

broke up the altercation that resulted in Henkel's fall and broken leg. Yet, it is also clear that such an eventuality was reasonably foreseeable.

■ When a fight occurs among several spectators it is common knowledge, and reasonably foreseeable, that the spectators will intervene to stop the fight. This is even more likely when the spectators and combatants know each other. Regardless of who initiated the altercation between Henkel and Holm, it was reasonably foreseeable that the other guests at the stag party would intervene to stop the fight. Consequently, that intervention does not amount to an intervening superseding cause of Henkel's injury.

*Foreseeability*

■ An act is not negligence if the harm that resulted from it could not be reasonably anticipated or foreseen. *Luke v. City of Anoka*, 277 Minn. 1, 8, 151 N.W.2d 429, 434 (1967). "Whether lack of negligence can be determined as a matter of law depends on the definition of duty and existence of foreseeability." *Hellman v. Julius Kolesar, Inc.*, 399 N.W.2d 654, 655 (Minn. Ct.App.1987).

> The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.

*Id.* (quoting *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 344, 126 N.E. 99, 100 (1928).

■ The trial court found as a matter of law that had Holm been negligent, Henkel's broken leg was not a foreseeable result of that negligence. We disagree. Should one engage in a fight, one risks the possibility of bodily injury of the sort of a broken leg. As indicated above, the intervention of spectators was similarly foreseeable. The occurrence of both was not remarkable and was clearly foreseeable.

*Directed Verdict or JNOV*

■ The trial court unequivocally granted a motion for a directed verdict, but then, for personal reasons, allowed the jury to deliver its verdict. The trial court may have anticipated the jury would confirm his dismissal of Henkel's action. It did not. We must now remand for a new trial despite the existence of a duly rendered jury verdict. The principle of judicial economy is not served.

■ In lieu of the trial court's unorthodox approach, a trial court in such a doubtful case may prefer to deny the motion for a directed verdict and consider the sufficiency of the evidence subsequently on a motion for J.N.O.V. *Tackett v. Kidder*, 616 F.2d 1050, 1052 (8th Cir.1980). In this case judicial economy is furthered:

> If a verdict is directed and the appellate court holds that the evidence was in fact sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial court submits the case to the jury, though it thinks the evidence insufficient, final determination of the case is greatly expedited. If the jury agrees with the Court's appraisal of the evidence, and returns a verdict for the party who moved for a directed verdict, the case is at an end. If the jury brings in a different verdict the trial court can grant judgment notwithstanding the verdict. Then if the appellate court holds that the trial court was in error in its appraisal of the evidence, it can reverse and order judgment on the verdict of the jury, without any need for a new trial.

*Id.* (quoting Wright and Miller, *Federal Practice and Procedure*, § 2533, p. 586).

### DECISION

The trial court erred in directing a verdict for respondent. We reverse and remand for a new trial.

Reversed and remanded.