**Terra SHEPPARD, By Next Friend Sherry WILSON, Appellant,**

v.

**MIDWAY R–1 SCHOOL DISTRICT, et al., Respondents.**

**No. WD 49614.**

Missouri Court of Appeals, Western District.

May 30, 1995.

As Modified Aug. 1, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied Sept. 19, 1995.

---

* All statutory references are to RSMo 1986.

J. Kirk Rahm, Rahm, Rahm, Koenig & McVay, P.C., Warrensburg, for appellant.

Kathryn M. O'Brien, Kansas City, for respondents.

Before BRECKENRIDGE, P.J., and
ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

On April 15, 1991, Terra Sheppard, a fourteen year old girl, participated in a junior high school track meet hosted by Midway R–1 School District and conducted at the Midway High School track. She was entered in the long jump event at the track meet.[1] During one of her jumps, Sheppard was injured as she landed in the long jump pit which had been prepared by Midway employees. She sustained an injury to her knee which required surgical replacement of a ligament in the knee. She has a permanent disability in her right knee which adversely affects the mobility and stability of the knee and which will, for the rest of her life, require her to wear an orthopedic brace when engaging in sports activities.

Sheppard brought suit against Midway in Cass County Circuit Court, pursuant to § 537.600,[2] alleging that Midway's long jump pit was in an unreasonably dangerous condition because it was not adequately prepared for long jumping. Midway denied that the long jump pit was inadequately prepared and alternatively alleged assumption of the risk as an affirmative defense.[3] Following a trial, the jury returned its verdict assessing no fault to Midway and the trial court entered judgment in favor of Midway pursuant to the verdict. Sheppard appeals this judgment.

Sheppard raises three points in her appeal. In her first point, she contends the trial court erred in giving its instruction on the issue of assumption of risk because (a) assumption of risk is not applicable as a complete defense in that Midway created the risk of injury by inadequately preparing the long jump pit, a risk not inherent in the long jump event, and (b) the assumption of risk instruction contained no requirement that the jury find Sheppard knowingly or intelligently assumed a foreseeable risk of the injury she received.

At trial, both sides presented evidence as to the cause of Sheppard's knee injury. Sheppard presented evidence that the long jump pit was wet and muddy, did not have an adequate amount of sand, and was not properly raked between jumps. Her experts testified that this was the cause of her knee injury. Midway, on the other hand, presented evidence that the long jump pit was adequately prepared and that Sheppard's injury was caused by her awkward landing.[4] In the alternative, Midway contended that even if the pit was in fact wet or otherwise inadequately prepared, Sheppard had observed the pit and had jumped into it several times prior to the injury and therefore assumed the risk of jumping into the pit that day.

The instructions of which Sheppard complains, Instructions 8 and 9, read as follows:

Instruction No. 8

In your verdict you must assess a percentage of fault to defendant Midway R–1 School District whether or not plaintiff Terra Sheppard was partly at fault if you believe:

First, there was a long-jump pit on defendant Midway R–1 School District's premises that was inadequately prepared, and as a result the long-jump pit was not reasonably safe, and

Second, defendant Midway R–1 School District knew or by using ordinary care should have known of this condition in time to remedy or warn of such condition, and

Third, defendant Midway R–1 School District failed to use ordinary care to remedy or warn of such condition, and

Fourth, such failure directly caused or directly contributed to cause damage to plaintiff Terra Sheppard,

---

1. Sheppard had competed in the long jump event in several previous track meets at other locations.

2. Unless otherwise indicated, all statutory references are to RSMo 1994.

3. Midway brought Sheppard's coach, Don Montgomery, into the litigation as a third-party defendant. The jury found Montgomery not liable for Sheppard's injury. Sheppard made no claim against Montgomery. This appeal raises no issue regarding the jury's finding for Montgomery.

4. Apparently, Sheppard landed on her right leg, which was fully extended and her foot was rotated outward.

unless you believe plaintiff Terra Sheppard is not entitled to recover by reason of Instruction Number 9.

Instruction No. 9, which was submitted to the jury over Sheppard's objection, then read:

### Instruction No. 9

In your verdict you must not assess a percentage of fault to Defendant Midway R–1 School District if you believe:

First, that the injury sustained by Plaintiff Terra Sheppard was a reasonably foreseeable risk of participating in long jump competition, and

Second, Plaintiff Terra Sheppard assumed that risk by participating in the long jump competition, and

Third, such risk assumed by Plaintiff Terra Sheppard directly caused her injury.

In other words, the tail on Instruction No. 8 ("unless you believe plaintiff Terra Sheppard is not entitled to recover by reason of Instruction Number 9.") coupled with Instruction No. 9 made Sheppard's assumption of risk an affirmative defense completely barring recovery: if the jury found Sheppard's injury was a reasonably foreseeable risk of participating in the long jump and that she assumed that risk by participating, she could not recover from Midway even if the jury also found Midway was negligent in preparing the pit.[5] In fact, under these instructions, the jury would have been required to find for Midway even if the jury had found Midway was totally at fault, so long as the injury was foreseeable and Sheppard assumed that risk.

Thus, the issue is whether Instruction 9 and the tail to Instruction 8, which made Sheppard's assumption of risk a complete bar to recovery, were proper. Sheppard contends they were not proper because under comparative fault, assumption of risk is not a complete bar to recovery where the risk is not an inherent part of the sport, but rather the defendant created the risk of injury through its negligence.

In 1983, the Missouri Supreme Court introduced the concept of comparative fault into Missouri negligence law in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). The court expressly adopted the Uniform Comparative Fault Act ("UCFA") and declared that "[i]nsofar as possible this and future cases shall apply the doctrine of pure comparative fault in accordance with the Uniform Comparative Fault Act." The court attached a copy of the UCFA, with commissioners' comments, to its opinion. The court in *Gustafson* did not specifically address the role of assumption of risk under comparative fault. However, the UCFA did. Section 1 of the UCFA states:

(a) In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery. This rule applies whether or not under prior law the claimant's contributory fault constituted a defense or was disregarded under applicable legal doctrines, such as last clear chance.

(b) "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. *The term also includes* breach of warranty, *unreasonable assumption of risk not constituting an enforceable express consent,* misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

(Emphasis added). Furthermore, the com-

---

5. Note that Instruction No. 8 was based on MAI 31.16 [1992 Revision] Modified, MAI 37.01 [1986 New] and MAI 19.01 [1986 Revision]. According to the Notes on Use following MAI 31.16 and 37.01, the tail, "unless you believe...." is to be used only "if an affirmative defense is submitted. [The tail] should not be used to submit comparative fault."

missioners' comment [6] states:

> "Assumption of risk" is a term with a number of different meanings—only one of which is "fault" within the meaning of this Act. This is the case of unreasonable assumption of risk, which might be likened to deliberate contributory negligence and means that the conduct must have been voluntary and with knowledge of the danger. As used in this Act, the term does not include the meanings (1) of a valid and enforceable consent (which is treated like other contracts), (2) of a lack of violation of duty by the defendant (as in the failure of a landowner to warn a licensee of a patent danger on the premises), or (3) of a reasonable assumption of risk (which is not fault and should not have the effect of barring recovery).

While the Missouri Supreme Court has rarely addressed the role of assumption of risk under comparative fault since *Gustafson*,[7] the issue regarding the role of assumption of risk under comparative negligence has been the subject of discussion by many courts and commentators.[8] Most classify assumption of risk into categories, namely, **express, implied primary,** and **implied secondary** (reasonable or unreasonable).

■ **Express assumption of risk** occurs when the plaintiff expressly agrees in advance that the defendant owes him no duty. Recovery is completely barred since there is no duty in the first place. In the case at bar, Sheppard did not sign a release or otherwise expressly relieve Midway from liability, so express assumption of risk is not at issue here.

■ **Implied primary assumption** of risk, like express assumption of risk, relates to the initial issue of whether the defendant had a duty to protect the plaintiff from the risk of harm. *Henkel v. Holm,* 411 N.W.2d 1, 4 (Minn.App.1987). It applies only where the parties have voluntarily entered a relationship in which the plaintiff assumes well-known incidental risks. *Id.* As to those risks, the defendant has no duty to protect the plaintiff and if the plaintiff's injury arises from an incidental risk, the defendant is not negligent. *Id.* Implied primary assumption of risk, like express assumption of risk, is based on consent by the plaintiff, but does not possess "the additional ceremonial and evidentiary weight of an express agreement." *Kirk v. Washington State Univ.,* 109 Wash.2d 448, 746 P.2d 285, 288 (1987) (quoting W. Keeton at 496). The plaintiff's consent is implied from the act of electing to participate in the activity. *Martin v. Buzan,* 857 S.W.2d 366, 369 (Mo.App.1993). "In such situations, assumption of risk is not actually an absolute defense but a measure of a defendant's duty of care; therefore, it survives the doctrine of comparative fault." *Id.* See also *Springrose v. Willmore,* 292 Minn. 23, 192 N.W.2d 826, 827 (1971) (Minnesota Supreme Court holding that because there is no duty in the first place, primary assumption of risk is not an affirmative defense.); *Arnold v. City of Cedar Rapids,* 443 N.W.2d

---

**6.** In *Lippard v. Houdaille Indus., Inc.,* 715 S.W.2d 491, 492 (Mo. banc 1986), the Missouri Supreme Court held that comparative fault principles do not apply in strict products liability cases, and therefore, the plaintiff's negligence should not defeat nor diminish the plaintiff's recovery. In so holding, the Court cautioned:

> There has been confusion because annotated sections of the Uniform Comparative Fault Act were appended to the *Gustafson* opinion, as a guide to proceedings in comparative fault cases. It was not the purpose of *Gustafson* to enact that model act as a virtual statute of the state of Missouri, to establish substantive principles controlling cases not then before the Court. Much less was there any purpose of giving special authority to the annotations and commissioners' comments. The direction in the opinion was simply to apply the procedures

of the Uniform Comparative Fault Act "insofar as possible."

Although the comments offer some guidance on the issue of assumption of risk, the UCFA itself clearly states that "unreasonable assumption of risk not constituting an enforceable express consent" is to be considered as an element of fault to be compared.

**7.** See *Krause v. U.S. Truck Co.,* 787 S.W.2d 708 (Mo. banc 1990) (addressing assumption of risk in the firemen's rule context).

**8.** See generally V. Schwartz, *Comparative Negligence* 185–220 (3d ed. 1994); H. Woods, *Comparative Fault* 131–164 (2d ed. 1987 and Cum Supp. 1994); Restatement (Second) of Torts § 496 (1965); *Effect of adoption of comparative negligence rules on assumption of risk,* 16 ALR4th 700.

332, 333 (Iowa 1989); *Coker v. Abell–Howe Co,* 491 N.W.2d 143 (Iowa 1992).

■ **Implied secondary assumption of risk (reasonable or unreasonable)** occurs when the defendant owes a duty of care to the plaintiff but the plaintiff knowingly proceeds to encounter a known risk imposed by the defendant's breach of duty. In this type of case, the question of the reasonableness of the plaintiff's assuming the risk becomes an issue. If the plaintiff's action is **reasonable,** he is not barred from recovery, nor is the defendant entitled to a comparison of fault, because a reasonable assumption of risk "is not fault and should not have the effect of barring recovery." UCFA, § 1, Commissioners' comment. *See also Kirk v. Washington State Univ.,* 746 P.2d at 291; *Knight v. Jewett,* 3 Cal. 4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (1992); and *Springrose v. Willmore,* 292 Minn. 23, 192 N.W.2d 826, 827 (1971). On the other hand, if the plaintiff's conduct in voluntarily encountering a known risk is itself **unreasonable,** it amounts to contributory negligence and is therefore subsumed as an element of fault to be compared by the jury. Regarding the reasonable/unreasonable distinction, one writer said:

> If secondary or implied assumption of risk is to be equated with contributory negligence, the question will be whether the plaintiff acted reasonably or unreasonably in assuming the risk. If his conduct falls in the latter category, he is guilty of contributory negligence and his recovery in a comparative fault jurisdiction will be proportionately diminished. If the plaintiff acted reasonably in assuming the risk, he is not guilty of contributory negligence. The distinction between reasonable and unreasonable assumption of risk is made in many of the cases and some of the statutes.... It is made in the Uniform Act where "fault" *inter alia* is defined as "un-

reasonable assumption of risk not constituting an enforceable consent."

H. Woods, at 135. *See also Kirk* 746 P.2d at 289 (Implied unreasonable assumption of risk is widely recognized as a form of contributory negligence, and is therefore, subsumed under contributory negligence); *Stephens v. Henderson,* 741 P.2d 952, 955 (Utah 1987) ("[A]ssumption of risk in its secondary sense ... is to be treated as contributory negligence."); *Swagger v. City of Crystal,* 379 N.W.2d 183, 184 (Minn.App.1985) ("In its 'secondary' sense assumption of risk means simply that the plaintiff was guilty of contributory negligence or fault.").

The Missouri Supreme Court recognized the distinction between primary and secondary assumption of risk in *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 712 (Mo. banc 1990). And, as stated by Woods, *supra,* the distinction between reasonable and unreasonable assumption of risk is made in the UCFA where "fault" is defined as "unreasonable assumption of risk not constituting an enforceable consent." Therefore, while **express and primary assumption of risk** remain a complete bar to recovery, **unreasonable implied secondary assumption of risk** is to be considered one element of fault to be compared by the jury.[9]

Generally, assumption of risk in the sports context involves primary assumption of risk because the plaintiff has assumed certain risks inherent in the sport or activity. *Martin v. Buzan* 857 S.W.2d at 369. The nature of the activity creates the risk. For example, the risk of being hit by a baseball is a risk inherent to the game of baseball, and everyone who participates in or attends a baseball game assumes the risk of being hit by a ball. However, "[t]he assumed risks in such activities [that fall within the primary assumption of risk category] are not those created by a defendant's negligence but rather by the na-

---

**9.** According to Professor Schwartz:

A rigorous application of implied assumption of risk as an absolute defense could serve to undermine seriously the general purpose of a comparative negligence statute to apportion damages on the basis of fault. This is perhaps the reason that every commentator who has addressed himself to this specific problem has agreed that plaintiff should not have his claim barred if he has impliedly assumed the risk, but rather that this conduct should be considered in apportioning damages under the statute.

V. Schwartz, § 9.5 at 180. (Footnotes omitted). Professor Schwartz noted that only one jurisdiction "vigorously applies" assumption of risk as an absolute defense after the adoption of comparative negligence. Schwartz at 180, note 78.

ture of the activity itself." *Id.* *See also Kirk,* 746 P.2d at 289 ("Assumption of the risk may act to limit recovery but only to the extent the plaintiff's damages resulted from the specific risks known to the plaintiff and voluntarily entered. To the extent a plaintiff's injuries resulted from other risks, created by the defendant, the defendant remains liable for that portion."); *Bush v. Parents Without Partners,* 17 Cal.App.4th 322, 21 Cal.Rptr.2d 178, 181 (1993) ("[I]n the sports context duty is fashioned 'in the process [of] defining the risks inherent in the sport not only by virtue of the nature of the sport itself, but also by reference to the steps the sponsoring business entity reasonably should be obligated to take in order to minimize the risks without altering the nature of the sport.' ") (*citing Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (1992)).

■ Consequently, if, as Sheppard contends, her injury was caused not by a risk inherent in the sport of long jumping but rather by Midway's negligence in preparing the pit, secondary, rather than primary, assumption of risk applies and the question of her negligence in assuming that risk should merely be compared by the jury as an element of comparative negligence rather than being a complete bar to her recovery.

This precise issue has been addressed by courts in other jurisdictions. In *Scott v. Pacific West Mountain Resort,* 119 Wash.2d 484, 834 P.2d 6, 13 (1992), the plaintiff, a twelve year old boy, was injured as he was attending a ski school at a ski resort. As he was practicing a slalom race, he veered off the race course and ran into an unused towrope shack which was allegedly positioned too close to the race course. The plaintiff alleged that his injuries were caused by negligent provision of dangerous facilities (the shack was placed too close to the slalom course) or improper supervision of the ski students. The Washington Supreme Court held summary judgment was improper and stated, "[P]rimary assumption of the risk in a sports setting does not include the failure of the operator to provide reasonable safe facilities." *Id.* 834 P.2d at 16. The court went on to state:

Implied *primary* assumption of risk arises where a plaintiff has impliedly consented (often in advance of any negligence by defendant) to relieve defendant of a duty to plaintiff regarding specific *known* and appreciated risks.

\* \* \* \* \* \*

A classic example of primary assumption of risk occurs in sports cases. One who participates in sports "assumes the risks" which are *inherent in the sport.* To the extent a plaintiff is injured as a result of a risk inherent in the sport, the defendant has no duty and there is no negligence. Therefore, that type of assumption acts as a complete bar to recovery. . . . A defendant simply does not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport.

*Id.* at 13–14 (emphasis in original).

Relying on the earlier case, *Kirk,* 746 P.2d 285, in which a cheerleader had sued her university to recover for injuries sustained while she was practicing cheerleading allegedly under dangerous conditions and without adequate supervision, the Washington Supreme Court said:

Although the plaintiff in *Kirk* did assume the risks inherent in the sport of cheerleading, she did *not* assume the risks caused by the university's negligent provision of dangerous facilities or improper instruction or supervision. Those were not risks "inherent" in the sport. Hence in a *primary* sense, she did not "assume the risk" and relieve defendants of *those* duties. However, to the extent she continued to practice (on a dangerous surface, without instruction), she may have "unreasonably assumed the risk" *i.e.,* have been contributorily negligent. This unreasonable assumption of the risk is assumption in the secondary sense which does not bar all recovery.

*Scott* 834 P.2d at 14 (emphasis in original).

■ Therefore, in the sports context, under comparative fault, if the plaintiff's injury is the result of a risk inherent in the sport in which he was participating, the defendant is relieved from liability on the grounds that by

participating in the sport, the plaintiff assumed the risk and the defendant never owed the plaintiff a duty to protect him from that risk. If, on the other hand, the plaintiff's injury is the result of negligence on the part of the defendant, the issue regarding the plaintiff's assumption of that risk and whether it was a reasonable assumption of risk, is an element of fault to be compared to the defendant's negligence by the jury.

■ This brings us to the case at bar. Sheppard contends her knee injury was the result of Midway's negligence in preparing and raking the long jump pit. Substantial evidence was presented at trial to establish that the long jump pit was inadequately prepared and not reasonably safe. This evidence tended to show that Sheppard's injury resulted not from a bad landing, an inherent risk of the sport of long jumping, but rather from the condition of the pit. There can be no question that Sheppard assumed the risks inherent in the sport of long jumping, but she did not assume the risk of Midway's negligent provision of a dangerous facility. Thus, as in *Kirk*, in a primary sense, she did not assume the risk and relieve Midway of its duty to provide a reasonably safe jumping pit, although based on her observations of the pit and continuing to participate, she may have unreasonably assumed the risk of injury in the secondary sense, i.e., have been contributorily negligent. Thus, Instruction 8, Sheppard's verdict director, and Instruction 10,[10] which submitted contributory negligence (secondary assumption of risk), properly presented the issues for determination by the jury.

■ By the same token, however, Midway presented substantial evidence to support a finding that Sheppard's injury resulted exclusively from an awkward or bad landing, an inherent risk of participating in the long jump. Thus, contrary to Sheppard's contention, Midway was entitled to an instruction on the affirmative defense of primary assumption of risk. Instruction 9 was given to submit the issue. However, Instruction 9 is fatally flawed. First, it was, as noted previously, overly broad in that it required the jury to find for Midway even if it found Midway negligently prepared the pit, and that the negligent condition of the pit contributed to cause the injury. In effect, it compelled the jury to render a verdict for Midway if it found any assumption of risk, primary or secondary, by Sheppard and, therefore, it negated Instruction 10 entirely.

■ Instruction 9 also failed to properly instruct the jury that Sheppard must have had knowledge of and appreciated the risk. As our Supreme Court said in *Ross v. Clouser*, 637 S.W.2d 11 (Mo. banc 1982), while discussing assumption of risk, "[b]ased on a voluntary consent, express or implied, to accept the danger of a *known and appreciated risk,* it bars recovery when plaintiff *comprehended the actual danger and intelligently acquiesced in it.*" *Id.* at 14 (emphasis added). The basis of primary assumption of risk is the plaintiff's consent to accept the risk. "This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character, and extent which make it unreasonable." Restatement (Second) of Torts § 496D(b) (1965). Furthermore, the standard is a subjective one, "what the particular plaintiff in fact sees, knows, understands and appreciates." *Id.* at § 496D(e). Instruction 9 merely directed that if the injury was a reasonably foreseeable risk of participating in the long jump, and that Sheppard assumed the risk by participating, the

---

10. Instruction No. 10 provided:

In your verdict you must assess a percentage of fault to plaintiff Terra Sheppard, whether or not defendant Midway R–1 School District was partly at fault, if you believe:
    First, either:
    plaintiff Terra Sheppard inspected and observed the long-jump pit and, despite the condition of sand pit, she competed in the long-jump competition, or

plaintiff Terra Sheppard unreasonably failed to appreciate the risks associated with the condition of the pit, or
plaintiff Terra Sheppard improperly executed the long jump, and
Second, plaintiff Terra Sheppard, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and
Third, such negligence of plaintiff Terra Sheppard directly caused or directly contributed to cause any damage plaintiff Terra Sheppard may have sustained.

jury must find for Midway. It did not tell the jury that it must find that Sheppard comprehended the actual danger and intelligently acquiesced in it.

For these reasons, we hold that the trial court erred in submitting instruction 9 to the jury and therefore reverse the judgment and remand for a new trial. Because of our disposition of Sheppard's Point I, we need not address her two other points, which relate to alleged errors in admission and exclusion of evidence, because the manner in which they arose at trial make it unlikely they will recur on retrial.

The judgment is reversed and the case is remanded for a new trial.

All concur.