# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-1311

_____

| | | |
|---|---|---|
| Breanne Bennett, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Hidden Valley Golf and Ski, Inc., | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: November 7, 2002
Filed: January 31, 2003

_____

Before MURPHY and MELLOY, Circuit Judges, and FRANK,[1] District Judge.

_____

MURPHY, Circuit Judge.

Breanne Bennett was injured while skiing at Hidden Valley, a downhill ski area owned by Hidden Valley Golf and Ski, Inc. She brought this negligence action against the corporation, and the jury decided in favor of the defendant. The district court[2] ordered that judgment be entered accordingly, and Bennett appeals. Her appeal

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

raises issues concerning some of the jury instructions and evidentiary rulings, as well as the denial of her motion for judgment as a matter of law and her claim that there was insufficient evidence to support the verdict. We affirm.

I.

In the early morning of February 7, 1998, Bennett went with two older male friends to Hidden Valley for a midnight ski session. At the time Bennett was 16 years old and a high school student. She had limited experience as a skier, all of which had been at Hidden Valley where she had skied once before and had snowboarded twice.

While Bennett was skiing down a slope marked for intermediate difficulty, she fell at a spot which the parties have variously referred to as a bump, a ridge, a jump, a ramp, or a mogul. She was thrown about five feet forward and hit the ground limp. There was conflicting evidence as to whether she had hit a tree. Both sides agree that the bump on the slope had not been intentionally created by Hidden Valley, but had formed as skiers and snow boarders cut across the slope and moved the snow. Bennett claims injuries as a result of the accident, including brain damage and a diminished future earning capacity.

Bennett sued Hidden Valley for compensatory and punitive damages under several theories of negligence, but the punitive damages claim was dismissed before trial. Bennett alleged that Hidden Valley had been negligent in the design, maintenance, and staffing of its skiing facilities; in the supervision of its customers "so as to prevent or cure dangers created by such business invitees"; in providing its customers with "unrestricted access to advanced and intermediate ski areas without assessing [their] ski aptitude, ability, or experience"; in permitting obstructions, including trees and jumps, to "exist in the path of skiers at a time when [it] . . . should have known that such obstructions posed a hazard or risk of injury"; in failing to "warn of dangers and obstructions which it knew or reasonably should have known

were present at its facilities and ski slopes"; and in failing "to guard against, barricade, protect, or cushion known or reasonably knowable obstructions in the path of skiers upon its ski slopes."

Hidden Valley denied negligence and raised assumption of risk as a defense. It waived a defense of comparative fault, however, and agreed that there was no issue as to whether Bennett had contractually released Hidden Valley from liability because she was a minor at the time of the accident.

The case proceeded to trial before a jury. Bennett objected to a comment in Hidden Valley's opening statement about her age and experience and moved for a mistrial. The court overruled the objection and denied the motion. Bennett then presented witnesses who described the accident, as well as expert evidence, to prove Hidden Valley's negligence and the extent of her injuries, including her diminished future earning capacity. After she rested, Hidden Valley put on evidence that it had exercised reasonable care and that the bump and trees on the slope were risks inherent in the sport of skiing, in support of its assumption of risk defense. Hidden Valley also introduced over objections a videotape, depicting a daytime view of the ski area at a time well after the accident, and Bennett's deposition testimony about her use of drugs. At the close of all evidence, Bennett moved for a judgment as a matter of law, claiming that Hidden Valley had not established its affirmative defense of assumption of the risk. The district court denied the motion. In his closing argument, defense counsel asked the jury to draw an adverse inference from plaintiff's failure to call two witnesses who her attorney in his opening had told the jury would be testifying about the extent of her brain injuries. The court overruled Bennett's objection, and the jury returned a verdict in favor of Hidden Valley.

Bennett appeals on multiple grounds. She contends that Instructions 6 and 7 misstated Missouri law. The first was a verdict director which differed slightly from the Missouri pattern instruction for premises liability, and the second dealt with

Hidden Valley's assumption of risk defense and directed the jury to find for it if the conditions Bennett encountered "were a risk inherent in the sport of skiing." Bennett further argues that the district court should have granted her motion for judgment as a matter of law because Hidden Valley did not make out an assumption of risk defense. Bennett also challenges many of the district court's evidentiary rulings and its handling of prejudicial remarks in defense counsel's opening statement and closing argument. Finally, she argues that the verdict for Hidden Valley was against the weight of the evidence.

## II.

Bennett argues that Instructions 6 and 7 were erroneous. We review a court's jury instructions for an abuse of discretion. United Fire & Cas. Co. v. Historic Preservation Trust, 265 F.3d 722, 727 (8th Cir. 2001). Although "our task is to determine whether the instructions fairly and adequately submitted the issues to the jury, we afford the district court 'broad discretion in choosing the form and language of the jury instructions.'" Id. (citation omitted) (quoting Fed. Enters., Inc. v. Greyhound Leasing & Fin. Corp., 786 F.2d 817, 820 (8th Cir. 1986)). In this diversity case, Missouri law applies to the substance of the instructions, while federal law "governs our review of the discretion exercised in refusing or admitting such instructions." Horstmyer v. Black & Decker, (U.S.), Inc., 151 F.3d 765, 771 (8th Cir. 1998).

## A.

Instruction 7 was the verdict director for Hidden Valley's defense of implied primary assumption of risk. Under Missouri law, this defense "relates to the initial issue of whether the defendant had a duty to protect the plaintiff from the risk of

harm."[3]  Sheppard ex rel. Wilson v. Midway R-1 Sch. Dist., 904 S.W.2d 257, 261 (Mo. Ct. App. 1995).  The defense applies where "the parties have voluntarily entered a relationship in which the plaintiff assumes well-known incidental risks."  Id.  A plaintiff's consent to assume the risk is "implied from the act of electing to participate in the activity" and "[a]s to those risks, the defendant has no duty to protect the plaintiff."[4]  Id.

Instruction 7 stated, "Your verdict must be for the defendant if you believe that the conditions that plaintiff encountered on defendant's ski slope on the day of the

_____

[3]Missouri recognizes three forms of assumption of risk: express, implied primary, and implied secondary.  See Sheppard ex rel. Wilson v. Midway R-1 Sch. Dist., 904 S.W.2d 257, 261–62 (Mo. Ct. App. 1995).  Only implied primary assumption of risk is at issue in this case.  Express assumption of risk "occurs when the plaintiff expressly agrees in advance that the defendant owes him no duty," id. at 261, and both parties agree that Bennett made no such agreement.  Implied secondary assumption of risk "occurs when the defendant owes a duty of care to the plaintiff but the plaintiff knowingly proceeds to encounter a known risk imposed by the defendant's breach of duty."  Id. at 262.  Hidden Valley did not claim that Bennett knowingly proceeded to encounter the particular risks; it thus did not raise a defense of implied assumption of risk in the secondary sense.

[4]Because the doctrine of implied primary assumption of risk focuses on whether the defendant owed a duty to the plaintiff with respect to the risk in question, it is not strictly an affirmative defense.  See Krause v. U.S. Truck Co., 787 S.W.2d 708, 712 (Mo. 1990) (en banc) ("Primary assumption of the risk is not really an affirmative defense; rather, it indicates that the defendant did not even owe the plaintiff any duty of care."); see also Sheppard, 904 S.W.2d at 261 (citing Springrose v. Willmore, 192 N.W.2d 826, 827 (Minn. 1971) ("Primary assumption of risk, express or implied, relates to the initial issue of whether a defendant was negligent at all—that is, whether the defendant had any duty to protect the plaintiff from a risk of harm.  It is not, therefore, an affirmative defense.")); 4 Fowler V. Harper et al., The Law of Torts § 21.0, at 188–89 (2d ed. 1986) ("In its primary sense the plaintiff's assumption of a risk is only the counterpoint of the defendant's lack of duty to protect the plaintiff from that risk.").

occurrence were a risk inherent in the sport of skiing." Bennett contends that the instruction misstated Missouri law because it did not require the jury to find that she had knowledge of, and appreciated, the specific dangers causing her injury.[5] Hidden Valley argues on the other hand that under Missouri law, a plaintiff assumes any risk inherent in a sport regardless of her actual knowledge of the risk.

In a diversity case such as this we must follow state law as announced by the highest court in the state. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Supreme Court of Missouri has explained that a participant in sport "accept[s] . . . those [hazards] that reasonably inhere in the sport so far as they are obvious and usually incident to the game." Perkins v. Byrnes, 269 S.W.2d 52, 53 (Mo. 1954).[6] It has thus prevented a spectator injured by a foul ball at a baseball game from proceeding beyond the summary judgment stage, for

> [t]his risk [of being struck by a foul ball] is a necessary and inherent part of the game . . . . [it] is assumed by the spectators because it remains after due care has been exercised and is not the result of negligence on the part of the baseball club.

Anderson v. Kansas City Baseball Club, 231 S.W.2d 170, 173 (Mo. 1950). Whether the plaintiff had subjective knowledge of the risk of being injured by a foul ball was

---

[5]Bennett implies that a different form of implied primary assumption of risk might apply to minors, but she has not cited any Missouri case that says that. In fact, the intermediate appellate court has discussed assumption of risk in a case involving a fourteen year old girl without indicating in any way that a different standard should apply. Sheppard, 904 S.W.2d at 259, 261–62.

[6]We recognize that Perkins also discussed whether the decedent had personal knowledge of the dangerous conditions in the river in which he drowned, 269 S.W.2d at 56, but the court had already concluded that the conditions at that time were unusual and not the normal or inherent conditions, see id. at 54–55.

immaterial. See id. at 171. The risk assumed by a spectator was described in this way in a case preceding Perkins:

> the patron . . . subjects himself to the dangers necessarily and usually incident to and inherent in the game. This does not mean that he "assumes the risk" of being injured by the proprietor's negligence but that by voluntarily entering into the sport as a spectator he knowingly accepts the reasonable risks and hazards inherent in and incident to the game.

Hudson v. Kansas City Baseball Club, Inc., 164 S.W.2d 318, 323 (Mo. 1942). These cases show that the Missouri Supreme Court has analyzed implied primary assumption of risk by focusing on whether the risk was incident to or inherent in the activity undertaken by the plaintiff, rather than on the plaintiff's subjective knowledge of the risk.

The lower courts in Missouri have generally taken the same approach. For example, injury to a professional hockey player was held not actionable because it was "'part of the game' of professional hockey." McKichan v. St. Louis Hockey Club, L.P., 967 S.W.2d 209, 213 (Mo. Ct. App. 1998).[7] Similarly, a golf spectator injured by a rock hidden in the grass "assumed the risks ordinarily incident to watching such a match and to walking over the course." Thompson v. Sunset Country Club, 227 S.W.2d 523, 525 (Mo. Ct. App. 1950). "'Falling and colliding with other skaters is not an extraordinary occurrence for those indulging in that form of exercise. One who skates assumes those risks . . . .'" Chaney ex rel. Chaney v. Creten, 658 S.W.2d 891, 894 (Mo. Ct. App. 1983) (quoting Reay v. Reorganization Inv. Co., 224 S.W.2d 580, 582 (Mo. Ct. App. 1949)); see also Martin v. Buzan, 857 S.W.2d 366, 369 (Mo. Ct. App. 1993) ("[P]ersons participating in sports may be held to have consented, by

_____

[7]Although McKichan was decided under Illinois law, the court concluded that it made no practical difference "because Missouri has essentially adopted the Illinois standard." 967 S.W.2d at 211.

their participation, to those injuries which are reasonably foreseeable consequences of participating in the competition.").

Hidden Valley's position is also supported by the law of California which has relevance because there, as in Missouri, the rights and duties of skiers and proprietors of ski areas are still governed by the common law. By contrast, many states with a large ski industry have statutes codifying those rights and duties. See, e.g., Colo. Rev. Stat. Ann. § 33-44-101; Idaho Code § 6-1101. In California a defendant has "no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself." Knight v. Jewett, 834 P.2d 696, 708 (Cal. 1992). This rule "does not depend on the particular plaintiff's subjective knowledge or appreciation of the potential risk. Even where the plaintiff, who falls while skiing over a mogul, is a total novice and lacks any knowledge of skiing whatsoever, the ski resort would not be liable for his or her injuries." Id. at 709; see also O'Donoghue v. Bear Mountain Ski Resort, 35 Cal. Rptr. 2d 467, 468 (Ct. App. 1994) ("[T]here is no duty of care to protect a sports participant against risks of injury that are *inherent in the sport itself*.").

Bennett points to language in several Missouri cases to support her position that Hidden Valley had to show she knew that she might encounter conditions like those existing on the night she was injured. She cites Ross v. Clouser, a case in which a third basemen was injured by a sliding baserunner. 637 S.W.2d 11, 13 (Mo. 1982) (en banc) (reversing a judgment notwithstanding the verdict which had been granted on the basis that the plaintiff had assumed the risk). Although the Missouri Supreme Court said in Ross that assumption of risk "bars recovery when plaintiff comprehended the actual danger and intelligently acquiesced in it," id. at 14, the court appeared to be speaking about implied secondary assumption of risk.[8] Ross also

---

[8]In order to tag out the baserunning defendant in Ross, the plaintiff had maintained his position in the base path, 637 S.W.2d at 13, thus raising an issue of implied secondary assumption of risk because he arguably had "knowingly proceed[ed] to encounter a known risk imposed by the defendant's breach of duty,"

differs from the case before us in that it involved a question of liability between fellow participants in a church league softball game. Id. at 13. Far from adopting a theory like the one Bennett advocates, the Ross court quoted with approval the statement that a relevant factor in determining "whether a player's conduct gives rise to liability" to a fellow player is whether the risk was one "'which inhere[d] in the game [or was one] . . . outside the realm of reasonable anticipation.'" Id. at 14 (quoting Niemcyzk v. Burleson, 538 S.W.2d 737, 741–42 (Mo. Ct. App. 1976), overruled on other grounds, Ross, 637 S.W.2d at 14).

The cases cited by Bennett from other Missouri courts are similarly unpersuasive for the theory she advances. First, they are not internally consistent. Compare, e.g., Lewis v. Snow Creek, Inc., 6 S.W.3d 388, 396 (Mo. Ct. App. 1999) (defendant needed only "show that [plaintiff's] injuries were the result of falling on ice, and that ice was a risk inherent in the sport of skiing"), with id. ("plaintiff must be aware of the facts that create the danger and they must appreciate the danger itself"); Sheppard, 904 S.W.2d at 263–64 ("[D]efendant is relieved from liability on the grounds that by participating in the sport, the plaintiff assumed the risk and the defendant never owed the plaintiff a duty to protect him from that risk."), with id. at 265 (instruction must require a finding "that [plaintiff] comprehended the actual

---

Sheppard, 904 S.W.2d at 262 (describing implied secondary assumption of risk). The only case cited by Ross in support of its statement about plaintiff's comprehension of the risk also involved implied secondary assumption of risk; the risk was acknowledged to have arisen from the defendant's negligence. See Turpin v. Shoemaker, 427 S.W.2d 485, 490 (Mo. 1968) (concluding that "plaintiff . . . was not fully informed of defendant's negligence and that he did not assume the risk of what actually occurred"); Sheppard, 904 S.W.2d at 262; see also 4 Harper et al., supra, § 21.1, at 204 ("It is clear then that the concept of assumption of risk in the primary sense is not to be considered in a situation where defendant has breached a duty towards plaintiff . . . .").

danger and intelligently acquiesced in it").[9]  Second, the inherent risk rule is not incompatible with a knowledge requirement since the rule can be viewed as charging a plaintiff with knowledge of risks which inhere in an activity.  See Hudson, 164 S.W.2d at 323 ("[T]here is no other reasonable conclusion but that [plaintiff] was familiar with the ordinary risks and hazards inherent in and incident to [the activity].");  cf. W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 68, at 488 (W. Page Keeton ed., lawyer's ed., 5th ed. 1984) ("There are some things . . . which are so far a matter of common knowledge . . . [that] a denial of such knowledge simply is not to be believed.").  Moreover, to the extent these lower court decisions might be inconsistent with the decisions of the Missouri Supreme Court, the latter control.  See Erie, 304 U.S. at 78; see also 19 Charles Alan Wright et al., Federal Practice and Procedure § 4507, at 145–47 (2d ed. 1996) (in diversity action federal court must follow law announced by forum state's highest court, "unless there are very persuasive grounds for believing that the state's highest court no longer would adhere to [it]").

We conclude that under Missouri law, a voluntary skier assumes the risks inherent in or incidental to skiing, regardless of her subjective knowledge of those risks.  This principle can also be put in terms of duty:  the proprietor of a ski area has no duty to protect a skier from those risks inherent in or incidental to skiing.  Implied primary assumption of risk does not of course relieve a defendant of liability for negligence, because inherent risks "are not those created by a defendant's negligence but rather by the nature of the activity itself."  Martin, 857 S.W.2d at 369; see also Knight, 834 P.2d at 316 ("[R]isk . . . posed by a ski resort's negligence[] clearly is not a risk []inherent in the sport . . . .").  By directing the jury to find for Hidden Valley if it determined that the conditions on the ski slope at the time Bennett was injured

---

[9]Contrary to Bennett's contention, Sherbert v. Alcan Aluminum Corp., is not on point since there is no indication that the injury in that case was alleged to have arisen from an inherent risk.  66 F.3d 965, 966 (8th Cir. 1995) (plaintiff injured when slick material fell from forklift).

were inherent risks of skiing, Instruction 7 fairly and adequately submitted the issue to the jury. The district court therefore did not abuse its discretion by giving this charge.

Resolution of this issue also affects Bennett's argument that the district court erred in denying her motion for a judgment as a matter of law at the close of the evidence. She had contended that because there was no evidence that she had knowledge of the risks which she encountered on the ski slope, Hidden Valley's implied primary assumption of risk defense must fail. Since such a showing was not required under Missouri law and there was evidence sufficient to support an implied primary assumption of risk defense,[10] it was not error for the district court to deny Bennett's motion. See Fletcher v. Price Chopper Foods of Trumann, Inc., 220 F.3d 871, 875 (8th Cir. 2000) (denial of a motion for judgment as a matter of law must be upheld if evidence is sufficient to support a jury verdict).

B.

Instruction 6 was a verdict director adapted from the pattern Missouri instruction on premises liability which added the words highlighted below:

> Your Verdict must be for the plaintiff if you believe:
> First, there was either:
> (1) a jump or ramp on defendant's ski slope, or
> (2) trees in the fall line of defendant's ski slope,
> and as a result of either or both of those conditions, the ski slope was not reasonably safe *for its intended purpose of skiing*, and
> Second, defendant knew or by using ordinary care could have

---

[10]Evidence was presented at trial to show that inherent risks in the sport of skiing include losing control, falling, colliding with objects and other skiers, encountering variations in snow surface terrain, variable weather conditions, and low visibility.

known of this condition, and

Third, defendant failed to use ordinary care to remove the jump or to remove, barricade or cushion the trees, and

Fourth, as a direct result of such failure, plaintiff sustained damage.

Unless you believe plaintiff is not entitled to recover by reason of Instruction No. 7.

Bennett argues that addition of this phrase to the pattern instruction erroneously suggested that proprietors of ski areas owe a different duty to customers than other businesses.

Under Missouri law, the care owed by a "'proprietor of a place of public amusement . . . . is a care commensurate with the particular conditions and circumstances involved.'" Gold v. Heath, 392 S.W.2d 298, 302 (Mo. 1965) (internal quotation marks omitted) (quoting Dickinson v. Eden Theatre Co., 231 S.W.2d 609, 610 (Mo. 1950)). It is one "'reasonably adapted to the character of . . . the amusements offered'" and the place. Id. (internal quotation marks omitted) (quoting Dickinson, 231 S.W.2d at 610); see also Weisman v. Herschend Enters., Inc., 509 S.W.2d 32, 38 (Mo. 1974) (standard of care owed by operator is "commensurate with the particular conditions and circumstances involved" and operator "is not an insurer of their safety"). The phrase *for its intended purpose of skiing* reflects the principle of Missouri law that the duty of care owed by a proprietor of a place of public amusement depends on "'the particular conditions and circumstances involved in the given case,'" Gold, 392 S.W.2d at 302 (internal quotation marks omitted) (quoting Dickinson, 231 S.W.2d at 610). The charge therefore fairly and adequately submitted the issue for the jury and was not an abuse of discretion by the district court.

-12-

III.

Bennett also challenges a number of evidentiary rulings by the district court, its handling of objections during Hidden Valley's opening statement and closing argument, and its denial of her motion for a mistrial.

A district court has wide discretion in admitting and excluding evidence, and "its decision 'will not be disturbed unless there is a clear and prejudicial abuse of discretion.'" United HealthCare Corp. v. Am. Trade Ins. Co., 88 F.3d 563, 573 (8th Cir. 1996) (quoting Maddox v. Patterson, 905 F.2d 1178, 1179 (8th Cir. 1990)). We will not reverse for an abuse of discretion in admitting or excluding evidence unless it "affects a substantial right of the party challenging the ruling." Williams v. Wal-Mart Stores, Inc., 922 F.2d 1357, 1360 (8th Cir. 1990). We also review a district court's conduct of a trial, including opening statements, for an abuse of discretion. Cox v. Treadway, 75 F.3d 230, 237 (6th Cir. 1996).

Bennett argues that the court erred by allowing Hidden Valley to introduce deposition testimony in which she described her experimental drug use and to refer to it in opening. This evidence was relevant, however, because of the damages Bennett was seeking for brain injuries. Her own medical expert admitted that the use of narcotics can lead to cognitive difficulties like those which she claimed resulted from her accident. The district court did not abuse its discretion by admitting the evidence under these circumstances or by overruling her objection to a reference to it in Hidden Valley's opening statement.

Bennett argues as well that the district court abused its discretion by permitting Hidden Valley to play a videotape showing the ski slope in daylight several years after the accident. Bennett complains that the snow conditions on the tape were different from those which existed the night she fell, that the tape showed skiers successfully negotiating the slope, and that it showed warning signs even though

there was no evidence Bennett had seen the signs on the night she was injured. Bennett argues that the effect of the video gave the jury a false impression of the safety of the slope and suggested issues of comparative fault which were not in the case.[11] Hidden Valley counters that the tape was admitted to assist Tim Boyd, the owner of Hidden Valley, in explaining the design of the ski area during his testimony.

Even if we might not have admitted the videotape at trial, our role as a reviewing court is to reverse only upon a clear and prejudicial abuse of discretion. See United HealthCare Corp., 88 F.3d at 573. Bennett has not made such a showing, and any risk of confusion to the jury was mitigated by Boyd's testimony. He explicitly stated that the tape had been made years after the accident, that it was not "meant to be any sort of a reconstruction of what happened [on the night of the accident]," and that it was not intended to show "the path that Breanne Bennett was going, or what she was doing on that night." After considering the record, we do not conclude that any error in admission of the videotape prejudiced Bennett's substantial rights. See Lovett ex rel. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1080 (8th Cir. 2000) (if district court errs in admitting evidence, jury's verdict will not be overturned unless "plaintiff's substantial rights were affected").[12]

Bennett argues that a remark about her in Hidden Valley's opening statement should have been excluded and that the court should have sustained her objection to

---

[11]Bennett also argues that a comment in Hidden Valley's opening statement that she had chosen not to take ski lessons raised an inference of contributory negligence. This comment was only an isolated remark in the opening statement, however, and the jury was not instructed on comparative fault. We do not see that the district court abused its discretion by overruling her objection, and in no respect was the remark "so clearly injurious as to require us to remand for a new trial." Moses v. Union Pac. R.R., 64 F.3d 413, 418 (8th Cir. 1995).

[12]We have examined the remainder of Bennett's evidentiary issues and find them to be without merit.

it and granted her motion for a mistrial.  Defense counsel had made the following comment:

> [Her] mother thought that her 16-year-old was mature enough to go skiing with 28- and 27-year-old men, and that's who she had been skiing with on the four other occasions.  They seem like decent people.  I'm not trying to draw anything about their character into this, but it gives you an example of the type of person Breanne Bennett was.

Bennett argues that this remark was an attempt to interject irrelevant issues of character into the case.  Hidden Valley says that it was responding to Bennett's opening statement which had made the age and maturity of its customers an issue when she suggested that the company was negligent in permitting young children to ski without restriction or supervision.  Bennett's counsel had said, for example, that "if you are six years old and you go in there, there is never any attempt to ascertain your level of skill or restrict you from someplace which they feel you are inappropriate to go to [sic]" and that "the evidence will be that six-year-olds and five-year-olds are [on the slopes]."  Hidden Valley says its counsel was simply indicating that Bennett was not a small child, but rather a mature teenager.

A trial court's management of opening statements and its denial of a motion for mistrial are reviewed for abuse of discretion.  See Cox, 75 F.3d at 237; Sterkel v. Fruehauf Corp., 975 F.2d 528, 532 (8th Cir. 1992).  In respect to motions for mistrial, the district court "'is in a far better position to measure the effect of [an] improper [comment] on the jury than an appellate court which reviews only the cold record.'"  Id. (quoting Williams v. Mensey, 785 F.2d 631, 637 (8th Cir. 1986)).  These remarks are not beyond fair comment within the context of the opening statements, and we conclude that the district court did not abuse its discretion by overruling the objection and denying the motion for a mistrial.

-15-

Bennett also contends the district court erred in overruling her objection to a portion of Hidden Valley's closing argument. Specifically she objects that defense counsel improperly argued that the jury should draw an adverse inference from her failure to call two witnesses who counsel had said would help establish the extent of her brain injuries. District courts "are invested with broad discretion to control closing arguments, and this court will reverse only for an abuse of discretion" that prejudices the substantial rights of the complaining party. McGuire v. Tarmac Envtl. Co., 293 F.3d 437, 442 (8th Cir. 2002); see 28 U.S.C. § 2111 (2000). We are not persuaded that this was an objectionable comment in light of the statements made in plaintiff's opening, but any error would not be reversible unless the statement were "plainly unwarranted and clearly injurious." Geimer v. Patrovich, 946 F.2d 1379, 1382 (8th Cir. 1991). We see no clear injury and note that the jury never had to reach the issue of the extent of Bennett's damages because of the nature of its verdict.

IV.

Bennett also contends that the evidence was insufficient as a matter of law to support the verdict in favor of Hidden Valley. She claims that Hidden Valley's expert admitted that hitting a tree was not an inherent risk of skiing and that the jury therefore could not have found that she had assumed the risk of her accident. In reviewing a challenge to the sufficiency of the evidence, we must affirm a jury verdict "'unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could have not found for that party.'" Stockmen's Livestock Mkt., Inc. v. Norwest Bank of Sioux City, N.A., 135 F.3d 1236, 1240 (8th Cir. 1998) (quoting Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 904 (8th Cir. 1995)).

Regardless of whether or not Hidden Valley admitted that trees are not an inherent risk of skiing, Bennett's argument is without merit. There was conflicting evidence about whether she hit a tree and whether she was injured by hitting the

ground or a tree. In addition, there was evidence to support a finding that Hidden Valley had properly discharged the duties it owed Bennett. For example, a professional ski patrol director had testified that the difficulty of the ski slope had been appropriately marked, that it was natural for bumps and ridges of snow to be created as people ski down a slope, that it is common in the ski industry to have exposed trees on a ski slope, and that the ski slope as it existed when Bennett was injured was in "a very reasonable condition." We conclude that the jury's verdict was supported by sufficient evidence.

V.

For the reasons discussed, we conclude that the district court did not abuse its discretion with respect to its jury instructions, evidentiary rulings, and management of the trial. We also conclude that Bennett was not entitled to judgment as a matter of law on Hidden Valley's assumption of risk defense and that she has failed to show that the verdict was not supported by sufficient evidence. We therefore affirm the judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-17-