# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2268

_____

Michael E. McPheeters,      *
       *
      Appellant,     *
       *    Appeal from the United States
      v.         *    District Court for the
       *    Western District of Missouri.
Black & Veatch Corporation,     *
       *    [PUBLISHED]
      Appellee.     *

_____

Submitted: February 16, 2005
Filed: November 4, 2005

_____

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

Michael E. McPheeters filed this lawsuit against his former employer, Black & Veatch Corporation, alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621-634 (2000), and the Missouri Human Rights Act, Mo. Rev. Stats. § 213.010-.137 (2000). Mr. McPheeters now

appeals the judgment entered by the district court[1] following a jury verdict in favor of Black & Veatch. After carefully reviewing the record, we affirm.

I.

Mr. McPheeters presented evidence at trial that he was fired after working 28 years for Black & Veatch Corporation, an engineering/construction firm in Kansas City, Missouri, that specializes in large, coal-fired power plants and municipal water and wastewater plants. In 1988, he was promoted to Director of Photography, a division within the Corporate Communications Department. In the 1990s, he supervised a staff of two other photographers until the two staffers were fired in 1996 in an effort to cut company costs. Mr. McPheeters worked long hours and traveled all around the world to complete his photographic assignments. By all accounts, his photography work was outstanding. Nevertheless, Black & Veatch terminated his employment in 2001, when Mr. McPheeters was 54 years old, after several cost-benefit studies recommended outsourcing the photography work.

Mr. McPheeters attempted to prove that he was fired on the basis of age discrimination. He presented evidence that in August 2000, William Cole, Vice President of Corporate Development, allegedly instructed Laura Luckert, Director of Creative Resources in the Corporate Communications Department and Mr. McPheeters' supervisor at the time, to try to eliminate the "gray hairs" in her department. Specifically, Luckert testified that Cole told her, "You've got a lot of gray hairs in your department, and I think we could save some money in that area. I'd like you to do a cost-analysis on those folks." (Trial Tr. at 329.) She said she was offended by the comment, and when she asked what he meant by "gray hairs," Cole

---

[1]The Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

named Bruce Erickson, a videographer, as an example. "He's been there a long time. He's older. He's at the top of his pay scale. . . . I think we could get what he does for us cheaper." (Trial Tr. at 335.) Luckert said that Cole told her to check into outsourcing the work and also asked her to work on drawing up a freelance photography contract to "see if we can get Mike McPheeters off the payroll." (Trial Tr. at 337.) Luckert testified that she was shocked and offended by the alleged "gray hairs" comment and said that she immediately determined to leave Black & Veatch. Luckert voluntarily ended her employment with Black & Veatch on November 2, 2000.

Black & Veatch discredited Luckert's testimony and presented evidence of a legitimate business judgment to justify Mr. McPheeters' termination. The evidence demonstrated that during the five years preceding Mr. McPheeters' termination, Black & Veatch had been considering the cost effectiveness of its in-house photography department. Several cost analysis studies recommended that outsourcing photography would be more cost-efficient for the company. Ms. Luckert was involved in a 1996 cost-benefit analysis of several administrative functions within the area of marketing communications, which included the three photographers. At the conclusion of this study, Ms. Luckert herself had recommended outsourcing all of the photography work as a cost efficient measure. Black & Veatch eliminated two of its three photographers on her recommendation, but chose to retain Mr. McPheeters at that time.

In 1999, Black & Veatch contracted with a communications consulting firm to conduct another study of the operational efficiency of certain communications functions within Black & Veatch. This study concluded that strategically outsourcing certain services, including graphic design and photography, would be more cost-effective than retaining those functions in-house. Again in 2000, Dave Thompson, an independent consultant, provided input regarding outsourcing certain communications functions, including photography. Vice President Cole asked

Thompson to draft a contract that could be used for freelance photography services, considering Mr. McPheeters as potentially filling that role.

Vice President Cole testified that at his August 10, 2000, meeting with Luckert, when the alleged "gray hairs" comment was made, he instructed Luckert to perform another cost-analysis study considering outsourcing certain functions and to work with Thompson in drawing up a freelance photography contract. Cole denied making the "gray hairs" remark and denied any intent to eliminate Mr. McPheeters' position because of his age. Cole said that his discussion with Luckert concerned exploring the possibility of outsourcing photography for cost-efficiency purposes, not age. He was aware of the term, however, and cited a management book that he owns which uses the term in a positive context to refer not to age but to an employee with experience and an ability to work effectively.

When Luckert resigned in November 2000, she had not taken any action on Cole's latest requests, and Cole had never pressured her to do so. She admitted that she had never reported the alleged "gray hairs" comment to human resources or anyone at the company during her employment, and she did not tell any coworker that she was leaving because of a remark made by Cole. In fact, the evidence supports an inference that she left because she learned in July that she would not be qualified to interview for a newly created position of communications supervisor and that she soon would be relocated from her private office to a cubicle. She did not reveal the alleged "gray hairs" comment until August 2001, after learning that Mr. McPheeters, Mr. Erickson, and others had been terminated.

In December 2000, Black & Veatch hired Corrine Smith, who was 53 years old, to fill the new communications supervisory role of Director of Communications, Marketing, and Branding. She worked under Cole and supervised Mr. McPheeters' department. In January 2001, Smith hired John Schaefer, who was 30 years old, as Director of Creative Services to fill the vacancy left by Laura Luckert. Upon advice

that the company was trying to reduce overhead expenses, Smith began to evaluate whether some functions within the department could be more cost-effective if outsourced. She instructed Schaefer to conduct a cost-analysis on positions in graphic design and photography to determine if there were opportunities to reduce overhead costs by outsourcing those functions. In May 2001, Schaefer recommended outsourcing the photography position.

Ms. Smith drafted an overall plan to restructure the Corporate Communications Department, which included transferring some employees from the communications department to different areas and positions within the company and terminating others. The plan included outsourcing the photography work, thereby eliminating the one remaining in-house photographer, Mr. McPheeters. Vice President Cole approved the preliminary proposal and asked Smith to consult Diane Retzke, Director of Employee Relations for Human Resources. Retzke reviewed the proposal to ensure that it was fair and that any plan to change or eliminate a position was based on objective business reasons. For a period of time following his termination, Mr. McPheeters continued to work for Black & Veatch on a contract basis. Black & Veatch has not since employed a staff photographer.

Following the trial, the jury entered a verdict in favor of Black and Veatch. On appeal, Mr. McPheeters challenges several rulings made by the district court both before and during trial.

## II.

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the

> proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed. R. Civ. P. 61; see also Fed. R. Evid. 103(a)(1),(2) (stating error may not be predicated on a ruling admitting or excluding evidence unless a substantial right is affected and an objection or offer of proof is made). Consistent with this standard, we accord the district court "wide discretion in admitting and excluding evidence, and its decision will not be disturbed unless there is a clear and prejudicial abuse of discretion." Bennett v. Hidden Valley Golf and Ski, Inc., 318 F.3d 868, 878 (8th Cir. 2003) (internal quotations omitted). We will not reverse a judgment on the basis of erroneous evidentiary rulings absent a showing that those rulings had a substantial influence on the jury's verdict. Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 889 (8th Cir. 1998).

## A. Pretrial Rulings.

Prior to trial, Mr. McPheeters' attorney sought a ruling on the admissibility of three types of evidence regarding other complaints of discrimination that he wanted to reference in his opening statement: (1) a 27-minute videotape of the deposition testimony of Diane Retzke, Director of Employee Relations for Human Resources; (2) the company's answer to Interrogatory No. 7, requesting every complaint of age discrimination brought against Black & Veatch from 1998 through the present; and (3) Plaintiff's Exhibit 4, an Excel spreadsheet created by Retzke, listing all complaints of discrimination against the company from 1999 through 2002. Mr. McPheeters argues that the district court erred by excluding this evidence, but with the exception of the videotape, the district court did not order a blanket exclusion of this evidence.

The district court noted that the videotape consisted of a discussion between the plaintiff's attorney and Ms. Retzke concerning whether she had appropriately answered the interrogatory requesting the disclosure of age discrimination claims

made by other employees. The district court concluded that the videotape demonstrated nothing more than a discovery dispute over whether the answer to Interrogatory No. 7 was insufficient or whether the interrogatory itself was not artfully drafted to elicit the information that the plaintiff's attorney sought. The district court refused to inject this discovery dispute into the trial and concluded that it did not impeach Ms. Retzke's credibility because no fair inference could be drawn from the video that she had acted to withhold information or was not truthful with her answers. The district court concluded that any probative value the videotape might have was outweighed by its prejudicial effect. See Fed. R. Evid. 403. The court limited this ruling to the 27-minutes of deposition video proffered, and we see no abuse of discretion in the district court's decision to exclude it.

We likewise find no abuse of discretion in the district court's pretrial ruling concerning the Excel spreadsheet and Interrogatory No. 7, which listed other complaints of discrimination in the workplace. Consistent with our opinion in Callanan v. Runyun, 75 F.3d 1293, 1297-98 (8th Cir. 1996), the district court cautiously refused to order a blanket exclusion of this evidence. The court concluded that on the pretrial record, these documents were overly broad and not specifically relevant to Mr. McPheeters' claim of discrimination. While background evidence of an employer's discriminatory policies or practices "may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive," Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988), overruled in part on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), as recognized in Foster v. Univ. of Ark., 938 F.2d 111, 115-16 (8th Cir. 1991), the evidence must nevertheless "assist in the development of a reasonable inference of discrimination within the context of each case's respective facts," Callanan, 75 F.3d at 1298 (internal quotations omitted). The district court specifically left open the possibility that the plaintiff at some point in the trial could make a more specific record showing the relevance of these other complaints of discrimination, but indicated that such a record did not yet exist at the pretrial stage.

We see no abuse of discretion.  The evidence of other complaints as listed in these documents did not reveal that any particular discriminatory policy or practice was prevalent at Black & Veatch.  No witnesses were prepared to testify to any specific factual allegations of other discrimination.  Additionally, neither the spreadsheet nor the interrogatory answer indicated what decisionmakers or departments were involved in those complaints, and thus, the other complaints were not shown to bear a connection to the employees allegedly involved in discriminating against Mr. McPheeters.  See id.  We cannot say that the district court abused its discretion as it "was in  a unique position to adjudge the relevance and probative value of the testimony."  Id.  The plaintiff made no further offer of proof regarding this evidence or any of the specific claims listed.

## B.  Opening Statements.

Mr. McPheeters complains of the district court's conduct during opening statements–sustaining numerous defense objections, limiting the scope of the plaintiff's opening statement, and taking a recess during the plaintiff's opening statement.  We review a district court's management of opening statements for an abuse of discretion.  Bennett, 318 F.3d  at 879-80.

Defense objections interrupted the plaintiff's opening statement four times.  The first two interruptions were short objections asserting that the plaintiff's counsel was being argumentative.  The district court promptly overruled the objections, and counsel continued with his opening statement. Having your opponent's objections overruled by the trial judge can hardly be deemed reversible error.  The third objection was taken up at a bench conference in the presence of the jury but outside the hearing of the jury.  The district court instructed the plaintiff's counsel at that time not to characterize the facts as a company-wide reduction-in-force until the evidence indicated something more than a departmental reduction-in-force.  We find no abuse of discretion.

The fourth interruption began as a bench conference and evolved into a short recess. Black & Veatch objected when it anticipated that the plaintiff's counsel was about to reference a group of e-mails that were written after Mr. McPheeters' termination. Counsel immediately went to the bench to discuss the objection. The e-mail authors were Black & Veatch employees who had expressed dissatisfaction with the company's decision to terminate Mr. McPheeters, and the contents of the e-mails indicated that the authors had been told to no longer contract with him. The trial court acted within its discretion in sustaining the objection. The e-mails were not statements of decisionmakers but of coworkers who were not listed as witnesses. Even if the statements could have been considered admissions of a party opponent, McPheeters' substantial rights were not affected because it was undisputed that he had in fact performed freelance contract work for Black & Veatch after his termination, and the case did not involve any claim of retaliation or discriminatory conduct subsequent to McPheeters' termination. We see no abuse of discretion in the district court prohibiting counsel from commenting in opening statements upon these peripheral matters.

During that same bench conference, the plaintiff's counsel then asked the court if he could reference an EEOC position statement prepared by Black & Veatch. Mr. McPheeters asserts that the court became visibly upset with his counsel during this bench conference in the presence of the jury, but the record indicates the use of white noise to prevent the jury from hearing the conversation and that a computer screen blocked much of the jury's view of the judge's facial expressions at the time. The trial judge expressed remorse at his frustration and explained that he was simply frustrated with the pace at which the case was progressing in general. (Trial Tr. at 218.) Mr. McPheeters complains that the judge gave no curative instruction and made no comment to the jury to rectify this conduct, but the record reflects that counsel did not ask that any curative statement or explanatory comment be made to the jury. Had the judge's frustration been so visible as to be prejudicial, counsel should have requested some action of the court. No prejudice is evident from the record.

As this second bench conference continued, the trial court suggested that a recess be taken in order to explore further the issue of whether it was proper to comment on the EEOC position statement. The judge, however, gave the plaintiff the option of continuing his opening statement or taking a recess. Plaintiff's counsel replied, "I would ask for a recess, Judge." (Trial Tr. at 216.) The record reflects that the jury was dismissed for 12 minutes while the court and counsel continued their discussion outside the jury's presence. The trial court ultimately determined that the plaintiff could proceed with his opening statement as he wished and overruled the objection to the position statement. Counsel cannot now complain of a course of action he requested and an objection overruled in his favor. "[O]ur role as a reviewing court is to reverse only upon a clear and prejudicial abuse of discretion." Bennett, 318 F.3d at 879. We see no abuse of discretion, and the trial judge's conduct during opening statements did not affect the plaintiff's substantial rights.

## C.  Evidentiary Rulings During Trial.

Mr. McPheeters argues that the district court made several erroneous evidentiary rulings during trial, namely, releasing Ms. Retzke from testifying, not admitting posttermination e-mails, not admitting salaries of other employees, permitting the defense to reference a book that was not on the exhibit list, permitting the defense to use a document in the plaintiff's handwriting that was never disclosed, and permitting the defense counsel to interject himself as a witness. "We review evidentiary rulings made at trial by a district court for an abuse of discretion, according such decisions 'substantial deference.'" Watson v. O'Neill, 365 F.3d 609, 615 (8th Cir. 2004).

On the first day of trial, Ms. Retzke became ill before testifying. She was emotionally distraught, advised the court that she has high blood pressure and fibromyalgia, and that stressful situations can aggravate the conditions. She was released for the day to attend a doctor's appointment. The district court declared Ms. Retzke an unavailable witness and excused her from testifying at trial after her doctor

indicated to the court that testifying in a courtroom setting could seriously jeopardize her health.

Mr. McPheeters argues that the district court's decision resulted in prejudice to his case because she was a critical witness. He argues that, while several hours of her deposition testimony were available for use at trial, he had purposefully withheld questions about her preparation of the EEOC position statement, choosing to save this line of questioning for her live testimony in front of the jury. Black & Veatch asserts that the ruling is not reversible error because Ms. Retzke was ill, a doctor advised that she should not testify in court, and the plaintiff already had taken several hours of deposition testimony from her. Also, the plaintiff was permitted to depose the doctor and attack the credibility of Ms. Retzke's claim of illness.

While Mr. McPheeters argues that Retzke was his most critical witness, he gave neither the district court nor this court any indication of the substance of her expected testimony, and he did not deem it critical enough to move the district court for a mistrial or a new trial on this basis. Retzke was not a direct decisionmaker in Mr. McPheeters' termination, and the position statement itself was admitted into evidence to demonstrate that the company had offered inconsistent reasons justifying the termination. See Troknya v. Cleveland Chiropractic Clinic, 280 F.3d 1200, 1205 (8th Cir. 2002) (concluding a witness was not critical where the testimony would have substantially duplicated documentary evidence admitted at trial); see also Maschka v. Genuine Parts Co., 122 F.3d 566, 570 (8th Cir. 1997) (holding that a letter sent by an employer to an agency explaining the reason for a termination is relevant to demonstrate that the company did not have a consistent reason for its decision, tending to prove that the reasons offered were pretext). The plaintiff did not demonstrate how Ms. Retzke's live testimony about preparing the document could have added critical evidence.

Even assuming error in the district court's refusal to permit Mr. McPheeters to depose Ms. Retzke one last time after she was declared unavailable to testify, we

would find no prejudicial error affecting the plaintiff's substantial rights. The plaintiff already had several hours of her deposition testimony available. Also, Ms. Retzke's involvement in Mr. McPheeters' termination had been limited to reviewing Smith's decision to terminate him for purposes of ensuring that the decision was fair and for objective business reasons, as reflected in the position statement that she completed and that was admitted at trial.

During trial, the district court sustained the defense objection to Exhibit 67– the group of e-mails (excluded from opening statements) from other employees stating that they were forbidden to contract with McPheeters and stating their opinions that the company did not save money through his termination. Mr. McPheeters complains that this ruling prevented him from demonstrating posttermination conduct indicating pretext. We disagree. The district court did not abuse its discretion by concluding that the e-mails were not relevant. The e-mail authors were not decisionmakers or supervisors, and their views questioning or criticizing the company's business decision could not demonstrate a pretext for age discrimination in McPheeters' termination. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995) (observing that federal courts "do not have the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination"). Also, as already noted, the e-mails' authors were not on the plaintiff's witness list,[2] and there was no allegation of posttermination discrimination or retaliation. The district court did not abuse its discretion in sustaining the objection to the e-mails in Exhibit 67.

Mr. McPheeters alleges error in the district court's refusal to permit him to offer evidence of the salaries of others remaining in or hired into the corporate

---

[2]Although the plaintiff issued subpoenas during trial for some of these witnesses, the district court ruled that they would be improper rebuttal witnesses and the plaintiff agreed to release them from the subpoena in light of that ruling.

communications department to demonstrate witness bias and pretext by challenging the defendant's assertion that his termination was a result of cost reductions in the corporate communications department. The court sustained the objection on the basis that these employees were not similarly situated to the plaintiff–none of them was a photographer. McPheeters did not make an offer of proof, though it was agreed he could do so, and therefore, we review only for plain error. See Watson, 365 F.3d at 615 ("Absent a proper offer of proof, we review under the plain-error standard and reverse only if there has been a miscarriage of justice."). The district court did not commit plain error. The plaintiff was permitted to demonstrate and argue that three younger men were hired into the department and a new supervisory position was created during this phase of cost reduction when Mr. McPheeters was terminated and that higher paid employees suffered no reduction in salary. That the jury did not know the actual amount of the witnesses' salaries does not rise to a miscarriage of justice.

Mr. McPheeters next asserts that the district court erred in permitting the defense to question Vice President Cole about a management book he allegedly kept in his office, titled Managing the Professional Service Firm. At trial, Cole denied using the term "gray hairs" at the August 2000 meeting with Luckert, but he testified that this book defines and uses the term in a positive light to refer to valuable, experienced employees who can get a job done effectively. The plaintiff's attorney did not object to this line of questioning until the book itself was offered as demonstrative evidence. Then, he asserted that the book was not on the defendant's exhibit list. The district court sustained the objection and did not permit the book to be admitted as an exhibit or used demonstratively. The plaintiff's only other objection during this line of questioning was that the defense was leading the witness. We find no abuse of discretion.

Mr. McPheeters argues that the district court erred by permitting the defense to use a document written in the plaintiff's own handwriting that was never produced pursuant to the plaintiff's pretrial request for personnel files or disclosed prior to trial.

The district court noted that the defense was using the document for impeachment purposes and thus, disclosure was not required. See Fed. R. Civ. P. 26(a)(1)(B). The plaintiff did not object on any other basis. The district court concluded that the document was not within the scope of the plaintiff's discovery request for personnel files because it had been found in Luckert's separate confidential files and that automatic disclosure was not required because the handwritten document was used solely for impeachment purposes.

Mr. McPheeters argues that the handwritten document was not used solely for impeachment purposes but also to support the defense's business reason justifying the termination. Even assuming that this is true, the plaintiff suffered no prejudice requiring reversal. The document was used on cross-examination to impeach a statement that Mr. McPheeters had made under direct examination, and the district court correctly concluded that, in the scheme of the whole trial, it was not particularly prejudicial. Further, the district court asked, "There's no relief you're asking me to give you at this point?" (Trial Tr. at 1019.) The plaintiff's counsel responded, "I think we asked for [the production of this document], but in the general scheme of things, so what." (Trial Tr. at 1019-20.) We find no abuse of discretion.

Finally, Mr. McPheeters argues that the defense attorney injected himself into the case as a witness by stating: "Now, we called Midwest Research Institute this morning and we asked the question about whether or not there's a staff photographer there - -." (Trial Tr. at 419.) The plaintiff's attorney immediately objected, and the judge held a bench conference, after which the judge instructed the defense attorney to restate the question or ask another one. The defense counsel rephrased the offending question, and there were no further objections in this regard. The district court did not abuse its discretion.

Mr. McPheeters argues that even if the alleged errors in isolation do not warrant reversal, their cumulative effect worked to deny him a fair trial. We respectfully disagree. "We will not reverse based upon the cumulative effect of errors

-14-

unless there is substantial prejudice to the defendant, and we have declined to apply the doctrine when the evidentiary rulings are within the trial court's discretion." United States v. Gladfelter, 168 F.3d 1078, 1083 (8th Cir.) (citation omitted), cert. denied, 528 U.S. 886 (1999). All of the rulings complained of were within the discretion of the district court, and none of them substantially influenced the verdict, either individually or cumulatively. See Nichols, 154 F.3d at 889.

## III.

Accordingly, we affirm the judgment of the district court.

_____