**IN THE COURT OF APPEALS OF IOWA**

No. 13-1242
Filed July 16, 2014

**BRYAN BOYD,**
        Plaintiff-Appellant,

**vs.**

**LEGISLATIVE SERVICES AGENCY, GLEN
DICKINSON and STATE OF IOWA,**
        Defendant-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Robert J. Blink,

Judge.

        Bryan Boyd appeals the district court's denial of his motion for new trial.

**AFFIRMED.**

        Eric M. Updegraff of Stoltze & Updegraff, P.C., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Jeffrey C. Peterzalek and

Meghan Gavin, Assistant Attorneys General, Des Moines, for appellees.

        Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

Bryan Boyd appeals from the district court's denial of his motion for a new trial in this age-discrimination case. He contends the district court improperly excluded evidence of his allegation his employer violated the veteran's preference statute. The Defendants—Legislative Services Agency (LSA), Glen Dickinson, and the State of Iowa (the State)—defend the district court's reasoning that the evidence was not relevant and likely to inject confusion into the trial. Finding no abuse of discretion with the district court's ruling excluding the evidence, we affirm.

## I.      Background Facts and Proceedings.

In 2009 Boyd worked for LSA under the supervision of Glen Dickinson until his discharge on November 10, 2010. Boyd filed a petition in December 2010, claiming a June 2009 employment action was a demotion in violation of his veteran's preference rights to notice and a hearing.[1]  However, he voluntarily dismissed his preference action in February 2011, shortly after it was filed.

One year later, in December 2011, Boyd filed a petition asserting age discrimination against LSA, Dickinson, and the State of Iowa. At the May 2013 trial, Boyd and Dickinson testified about two employment incidents: (1) Dickinson's removal of Boyd from his supervisory responsibilities in June

---

[1] The veteran's preference law provides: "No person holding a public position by . . . employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such . . . employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges . . . ." Iowa Code § 35C.6 (2009). It further states: "The persons thus preferred shall not be disqualified from holding any position hereinbefore mentioned on account of age or by reason of any physical disability . . . ." *Id.* § 35C.2.

2009; and (2) Dickinson's elimination of Boyd's position and another employee's position during a restructuring at LSA in November 2010.

The day before meeting with Boyd in June 2009, Dickinson wrote a memo for Boyd's personnel file suggesting Boyd be demoted to Grade 35, senior computer systems engineer, from Grade 38, division administrator. Under "cause," Dickinson stated: "Due to the critical nature of not storing tapes off-site during legislative session, when thousands of hours of work could be lost, is unacceptable. This lack of judgment in protecting legislative data has forced me to remove [Boyd] from his management responsibilities." On cross-examination, Dickinson admitted it was Boyd's performance of his backup duties, his "line work," that created the risk and not his management duties.

The next day, June 9, 2009, Dickinson and Boyd met to discuss the incident. Dickinson testified that the demotion did not actually occur. He indicated Boyd retained the same job title and retained his employment grade, though he no longer had supervisory duties. Dickinson testified regarding the meeting and the subsequent events, stating:

> A. [A]fter the 2009 incident, *instead of demoting him*, *I left him in that job title with the idea to see if his work improved*. When his work didn't improve and there were more problems, then yes, that supervisory position was eliminated [in November 2010].
> Q. So your testimony is . . . in 2009 he was a supervisor, but in 2010 he wasn't? A. My testimony is that I left him in a division administrator position that used to have supervisory responsibilities. I put another supervisor responsible for him in hopes that his work could improve and that he could take on additional responsibilities. That doesn't happen. I had to make a choice for reallocating resources, and the choice I made was to eliminate [Boyd's] position.

(Emphasis added.)

Boyd also testified about the meeting and the subsequent events:

> Q. What happened in [the June 9, 2009] meeting? A. After I left the meeting I felt good about our relationship. You know, he had already sent out a message to my employees in my division saying I was going to be replaced. *So I told him I'd like to retain my title*, and he told me he wanted to give Jeff a try in the division. But we had a good rapport. I think we had an understanding when we came out of the meeting.

(Emphasis added.) Boyd testified that during the meeting, Dickinson accused him of "endangering the legislature," and he replied Dickinson was "the one that wouldn't provide me with the technology to get the job done." Boyd further testified his relationship with Dickinson after the June meeting "went pretty well." Dickinson put him "on a major project to . . . do some technical research with Google apps. That was a good project. I enjoyed it." Boyd stated at some point after the June meeting "but I can't tell you at what point" his relationship with Dickinson deteriorated—Dickinson would not respond to his "calls or e-mails." Dickinson eliminated Boyd's position in November 2010 during a restructuring.

During trial, Boyd sought to introduce evidence of an alleged violation of his veteran's preference in support of his age-discrimination claim. The State filed a motion in limine to exclude any reference to, or evidence concerning, discrimination on the basis of anything other than age. During an off-the-record discussion on the motion, the court ruled it would grant the motion and exclude the evidence. On the record, Boyd's counsel then argued:

> The court ruled [Boyd] would not present evidence of violation of the Veterans Preference Act as evidence of age discrimination. [Boyd] would have offered that evidence for purposes of showing that the June 2009 demotion . . . was essentially [the employer's] avoidance to deprive [him] of a veterans preference hearing about the matters that were asserted as misconduct . . . and that gives rise to the inference that [Boyd]

was right and [Dickinson] was wrong about whether or not [Boyd] had committed any wrongdoing [in June 2009].

And then at the same time it would have been offered for the purposes of showing that by eliminating [Boyd's] position in November 2010, by keeping him in a redundant position [in June 2009] that they were able to deprive him of a veterans preference hearing by virtue of calling it a job elimination, and that provides an explanation as to why reasons for factors in the decision to terminate [Boyd] were not included in the termination letter.[2]

Because if they were in fact included in the termination letter, it would tip off legal counsel and the services committee who the October 26, 2010 memo[3] was written to, to the fact that perhaps the veterans preference hearing was necessary if there was going to be a decision to eliminate [Boyd] as opposed to Jeff . . . and that they were going to use reasons to strike misconduct for that decision.

So those were the purposes for what we were going to use them for, to show there was a deviation from the policies of the State of Iowa which were encapsulated in [the Iowa Veterans Preference Act] and that those were in fact designed to find a way to get rid of [Boyd] at some point.

The State characterized Boyd's argument as "one of the more convoluted arguments I've heard with respect to why something should be coming into evidence." The State argued, first, that Boyd voluntarily dismissed his preference action, and second, the statute "doesn't have any application when a person's position is eliminated." Finally, counsel asserted there is no evidence of "anything about a veteran's preference having anything to do with some tie-in to age discrimination," Boyd is attempting to confuse the jury, and "we end up at the very least having a trial within a trial."

In granting the motion, the court stated: "I'm concerned about an attempt to insert into the record another cause of recovery which [Boyd himself] has removed from this case. At one point in time [Boyd] thought that was a viable

---

[2] Boyd did not include the termination letter in the appendix filed in this appeal.
[3] Boyd did not include the October 2010 memorandum in the appendix filed in this appeal.

claim. Without suggestion from anyone else, [Boyd] abandoned that claim and withdrew it." The court also ruled the challenged evidence is "extremely attenuated from the heart of the claim" in this age-discrimination case, "so attenuated" it "does not have relevance." The court concluded, even if the challenged evidence had relevance under Iowa Rule of Evidence 5.403, "it is only going to inject confusion."

The jury returned a verdict in favor of the State. Boyd filed a motion for a new trial asserting the challenged evidence should have been admitted, and the court denied Boyd's motion. Boyd now appeals the district court's denial of his motion for new trial.

## II.     Standard of Review.

Because we are reviewing the court's decision on a motion for new trial, "[t]he scope of our review . . . depends on the grounds raised in the motion." *Pavone v. Kirke*, 801 N.W.2d 477, 496 (Iowa 2011). "To the extent the motion is based on a discretionary ground, we review it for an abuse of discretion. But if the motion is based on a legal question, our review is on error." *Id.*

We review the district court's evidentiary rulings for an abuse of discretion. *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014). Thus, our review here is for an abuse of discretion. *See Pavone*, 801 N.W.2d at 496. "'A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable. The grounds for a ruling are unreasonable or untenable when they are based on an erroneous application of the law.'" *Giza*, 843 N.W.2d at 718 (quoting *In re Trust No. T–1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013)).

**III.    Discussion.**

A district court may grant a new trial under certain circumstances, if there is significant irregularity in the proceedings or if there is an abuse of discretion that prevented a fair trial.  Iowa R. Civ. P. 1.1004(1).  Boyd does not allege a significant irregularity in the proceedings.  Rather, he alleges an abuse of discretion with respect to the court's exclusion of his veteran's preference evidence.

At issue here is the relevance and probative value of the evidence of Boyd's allegation the defendants violated his veteran's preference rights.  The district court's decision to admit evidence requires a two-part analysis: (1) the court must determine if the evidence is relevant, and (2) if the evidence is relevant, the court must then determine if its probative value is substantially outweighed by the risk of unfair prejudice or confusion of the issues.  Iowa R. Evid. 5.401; *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 158 (Iowa 2004).

**A.  Relevancy of the Evidence.**  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Iowa R. Evid. 5.401.

Because this action originated in a claim of age discrimination, we first note the requirements for establishing that claim in order to determine if the veteran's preference evidence was relevant.  Under the Iowa Civil Rights Act (ICRA), claims of discrimination for which direct proof is not available are analyzed using the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See* Iowa Code § 216.6(1)(a)

(2011); *King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601 (Iowa 1983). The claimant must initially make a prima facie case of age discrimination. *King*, 334 N.W.2d at 601. The burden then shifts to the party alleged to have engaged in discrimination to establish a non-discriminatory reason for the adverse employment action. *Id.* at 602. Finally, the burden shifts back to the claimant to establish that the reason given by the opposing party is pretexual and thus the action was taken for discriminatory reasons. *Id.* at 603.

The third step in the *McDonnell-Douglas* framework, establishing pretext, may be supported by evidence of an employer's failure to follow its own policies. *Floyd v. Mo. Dep't of Soc. Servs.*, 188 F.3d 932, 937 (8th Cir. 1999). A claimant may establish age discrimination by showing his employer offered no valid, believable, and non-discriminatory reason for the employment decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

On appeal, Boyd claims:

> Dickinson withdrew this formal demotion for purposes of avoiding a confrontation in a public forum about this issue. Instead Dickinson attempted to save face for his previous criticism of Boyd with others by removing Boyd's supervisory responsibilities, which apparently have little or nothing to do with the backup system.
> . . . .
> This process culminated in [Dickinson] falsely justifying a "reduction in force" by claiming that [Boyd] was really a supervisory employee in November 2010. This claim was also made in materials that would have been presented to Dickinson's superiors if based on misconduct instead of a job elimination. Essentially, the plaintiff would have argued that this purported reason for his elimination in 2010 was covered up to avoid scrutiny of Dickinson's treatment of Boyd in June 2009 through the end of his employment. This evidence would thus have been relevant to both questions of violation of their policies and pretext for discrimination.

The State responds that Boyd was not demoted in June 2009, considering his salary and title remained the same, although his job duties were altered when his supervisory responsibilities were removed.

We first note the record shows Boyd requested he keep his job title and Dickinson acquiesced. While Dickinson altered Boyd's job duties, Dickinson did not reduce Boyd's pay. Thus, whether Dickinson's June 2009 actions were a demotion requiring a hearing under the veteran's preference statute would require the jury to resolve a case within a case—as the district court correctly found, a confusing proposition. The district court also prefaced its reasoning by noting Boyd had originally filed an action asserting a veteran's preference violation, yet without explanation, abandoned that claim.

Second, even if we assume the State violated the veteran's preference statute in June 2009, we agree with the State's claim "Boyd has failed to explain how that evidence has any bearing on determining whether the defendants acted with age-related animus."[4] The Eighth Circuit recognizes the district court's ability to use its discretion with respect to exclusion of evidence it determines to be only marginally relevant. *McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1101 (8th Cir. 2005). Specifically, in *McPheeters*, the plaintiff in an age-discrimination suit against his employer was seeking to have evidence of past allegations of age discrimination admitted. The court refused, stating:

> While background evidence of an employer's discriminatory policies or practices may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an

---

[4] Boyd's argument the defendant's discriminated against him based on his age in November 2010 to cover up a violation of the preference statute in June 2009 is not supported by any evidence in the record.

unlawful motive, the evidence must nevertheless assist in the development of reasonable inference of discrimination within the context of each case's respective facts.

*Id.* (citations omitted) (internal quotation marks omitted). In Boyd's case, like McPheeters's, only the most attenuated connection between the evidence and its relationship to the case at bar can be made. Just as McPheeters claimed that a history of discrimination would assist him in proving his own claim of age discrimination against his employer, so too does Boyd believe that his own allegations of past negative treatment by his employer will assist in proving his current claim. *Id.* However, in neither case is the challenged evidence sufficiently probative of a pattern, practice, or discriminatory animus on the part of either employer. *See id.* at 1102. Indeed, the evidence McPheeters sought to introduce was arguably more relevant than the evidence that Boyd was seeking to introduce, and the Eighth Circuit refused McPheeters's request. *Id.*

Third, Boyd's veteran's preference evidence and associated claim is based on the 2009 "demotion" and not on the elimination of his position during the 2010 LSA downsizing. He was not terminated in 2009. By its terms, the veteran's preference statute applies to terminations. *See* Iowa Code § 35C.6 ("No person . . . to whom a preference herein is granted . . . shall be removed . . . .").

For all of the above reasons, the challenged evidence is not relevant to Boyd's age-discrimination claim, and we find no abuse of discretion in the district court's finding such evidence "attenuated" and not relevant.

**B. Probative Value versus Unfair Prejudice.** Even if we assume the challenged evidence was relevant, to be admissible the probative value of the

relevant evidence must outweigh the potential for prejudice. A risk of unfair prejudice arises when the evidence lends itself to leading the jury to make a decision on an improper, usually emotional, basis. *Pexa*, 686 N.W.2d at 158. The district court ruled there was risk in introducing evidence of the voluntarily-dismissed claim. Specifically, there was risk that it would simply confuse the issue before the jury.

As a general rule, the district court has the discretion to exclude relevant evidence if the potential to prejudice the jury outweighs the probative value of the evidence. *See id.* The evidence may also be excluded if it would cause the jury to make its decision based on its sympathies, punitive instincts, or other human emotions rather "than the established propositions in the case." *State v. Rodriquez*, 636 N.W.2d 234, 240 (Iowa 2001) (quoting 1 Jack B. Weinstein et al., Weinstein's Evidence ¶ 403[03], at 403–33 (1986)). We conclude the district court did not abuse its discretion in ruling the potential confusion and prejudicial effect of the preference evidence outweighed its probative value. The court's ruling was not based on "untenable or unreasonable" grounds. *See Giza*, 843 N.W.2d at 718.

## IV.    Conclusion.

The district court did not abuse its discretion in excluding the challenged evidence and in denying Boyd's motion for a new trial. Accordingly, we affirm.

**AFFIRMED.**